IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
───────────────────────────────────────────────

JOHN DOE 52,

                Plaintiff,                OPINION & ORDER

  v.

                                                  14-cv-387-wmc

MAYO CLINIC HEALTH SYSTEM – EAU
CLAIRE CLINIC, INC., DAVID A. VAN DE
LOO, PROASSURANCE CASUALTY CO. and
INJURED PATIENTS AND FAMILIES
COMPENSATION FUND,

                Defendants.
───────────────────────────────────────────────

In this civil action, plaintiff John Doe 52 alleges that defendant David A. Van de Loo committed malpractice by touching him unnecessarily and inappropriately in the course of medical treatment. Plaintiff also brings claims against Mayo Clinic Health System – Eau Claire, Van de Loo's former employer, for vicarious liability; negligence in retaining and supervising Van de Loo; and negligent failure to warn patients and patients' families about Van de Loo's inappropriate behavior.[1] All defendants have moved to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6), primarily because they contend it is time-barred under the applicable statute of limitations. The court agrees and will grant the motions to dismiss.

ALLEGATIONS OF FACT

In resolving a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court accepts as true all well-pled factual allegations in the complaint, *Adams v. City of Indianapolis*,

───────────────────
[1] Defendants ProAssurance Casualty Co. and Insured Patients and Families Compensation Fund appear in this case by virtue of insurance policies they issued to Mayo Clinic and Van de Loo. *See* Wis. Stat. § 632.24 (Direct Action Statute); § 803.04 (Permissive Joinder Statute).

742 F.3d 720, 728 (7th Cir. 2014), and views them in the light most favorable to the non-movant, *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000)). The court need not accept legal conclusions as true, however, meaning "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). For purposes of the present motion, the court accepts as true the following allegations of fact.

Plaintiff John Doe 52 is a resident and citizen of the State of Minnesota. Defendant Mayo Clinic Health System – Eau Claire Clinic, Inc. ("the Clinic") is a Wisconsin corporation with its principal place of business in Eau Claire, Wisconsin. Defendant Van de Loo is a resident and citizen of Wisconsin. At all times relevant to the complaint, he was a licensed physician employed by the Clinic. Defendant ProAssurance Casualty Company ("ProAssurance") was an Alabama corporation with its principal place of business in Birmingham, Alabama. ProAssurance issued a policy of liability insurance to Van de Loo and the Clinic during the time relevant to the complaint. Finally, defendant Insured Patients and Families Compensation Fund ("the Fund") is a Wisconsin corporation with its principal place of business in Madison, Wisconsin. It also issued insurance policies to Van de Loo and the Clinic.[2]

From approximately 2004 until 2007, Van de Loo served as plaintiff's physician. During that time, plaintiff was approximately 15 to 17 years of age. Plaintiff received medical treatment from Van de Loo on the Clinic's premises on two or three occasions. On those occasions, Van de Loo touched Doe's genitals in what he contends was a normal part

---

[2] The court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

of the medical treatment rendered to plaintiff. Additionally, during some of those occasions, Van de Loo asked plaintiff's parent to leave the room and then touched, squeezed and manipulated plaintiff's genitals, which Van de Loo contends was also a normal part of medical treatment he rendered to plaintiff. Van de Loo did not wear gloves during his examinations. Plaintiff and his parents consented to plaintiff's medical treatment and were apparently unaware at the time that Van de Loo had engaged in any inappropriate touching.

Van de Loo's normal practice was to ask parents to leave the room while he performed physical examinations on minor male patients. He did not have others present either. When the parents of one minor patient questioned a nurse as to whether this practice was normal, the nurse responded it was how Van de Loo did things. Although the Clinic was Van de Loo's employer and, by 2008, knew or should have known that Van de Loo performed medical exams involving inappropriate touching of minors, it never told any of its patients that Van de Loo was unsafe, nor that Van de Loo had performed an inappropriate physical examination on a minor patient.

Plaintiff did not realize until October of 2012 that the medical examinations he received from Van de Loo did not comport with the standard of care. Now armed with this knowledge, he has suffered profound psychological damage, including depression, anxiety, embarrassment, emotional distress, self-esteem issues and loss of enjoyment of life.

PRELIMINARY MATTERS

**I. Judicial Notice**

The Clinic has filed a motion asking the court to take judicial notice of various state criminal and civil court proceedings involving Van de Loo.[3] (Dkt. #26.) Plaintiff has not opposed that motion, but his lack of opposition appears to be based on a fundamental misunderstanding of the law. Specifically, plaintiff argues that by asking the court to take judicial notice of matters outside the pleadings, the Clinic has "implicitly" requested that the court convert its Rule 12(b)(6) motion into a motion for summary judgment. (*See* Br. Opp'n (dkt. #36) 1.) On the strength of that "implicit" request, plaintiff asks the court to notice additional facts and convert the parties' motions to dismiss to one for summary judgment.[4]

While a defendant's decision to attach additional evidentiary materials to a Rule 12(b)(6) motion generally converts that motion to summary judgment, *see Crawford v. United States*, 796 F.2d 924, 927 (7th Cir. 1986), "'[t]he district court may also take judicial notice of matters of public record' without converting a 12(b)(6) motion into a motion for summary judgment." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (quoting *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991)). The Clinic's specific request that the court take judicial notice of the state court proceedings is perfectly proper: "[t]he most frequent use of judicial notice of ascertainable facts is in noticing the contents

---

[3] Van de Loo's own motion to dismiss also makes such a request, asking the court to take judicial notice of a particular hearing in one of those civil cases, which was dismissed on statute of limitations grounds similar to those that Van de Loo advances here. (*See* Br. Supp. Mot. Dismiss (dkt. #33) 8-9.) The above analysis applies with equal force to that request.

[4] In light of plaintiff's position, the Clinic has also moved for leave to file a reply (dkt. #37), but because the court has rejected plaintiff's argument without the benefit of additional briefing, that motion is denied as moot.

of court records." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (quoting 21 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5106, at 505 (1st ed. 1977 & Supp. 1997)). Thus, there is no reason for the court to convert the present motion into one for summary judgment.

Nevertheless, the court need not consider the materials in question to resolve the present motion to dismiss. As will be discussed further below, the pleadings themselves establish that plaintiff's action is untimely without the need to take notice of the records in the state court actions. Accordingly, the motion for judicial notice will be denied as moot.

**II. Motion to Treat the Fund's Motion to Dismiss as Opposed**

Plaintiff has filed a motion asking the court to deem his opposition to the Clinic's motion to dismiss as his opposition to the Fund's motion as well. (Dkt. #39.) He bases this motion on his ostensible failure to file a timely brief in opposition to the Fund's motion to dismiss (dkt. #23). Since it appears from the docket sheet that plaintiff did, in fact, file a timely brief in opposition (*see* dkt. #29), his motion is unnecessary and will also denied as moot.

OPINION

All defendants have moved to dismiss the claims against them on statute of limitations grounds. "[B]ecause the period of limitations is an affirmative defense," the Seventh Circuit has held that "it is rarely a good reason to dismiss under Rule 12(b)(6)." *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004); *see also Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003) (plaintiff is not required to allege facts that negate affirmative defenses in his complaint). However, dismissal under Rule 12(b)(6) on

statute of limitations grounds is nevertheless "appropriate where 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations.'" *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008).

"Statutes of limitations are generally considered part of the forum state's substantive law which federal courts must apply when sitting in diversity." *Evans ex rel. Evans v. Lederle Labs.*, 167 F.3d 1106, 1111-12 (7th Cir. 1999) (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 109-10 (1945)); *see also Hollander v. Brown*, 457 F.3d 688, 694 (7th Cir. 2006). Accordingly, Wisconsin statutes of limitations apply in this suit.

Plaintiff brings six causes of action in this suit. The first, a claim for medical malpractice, is against Van de Loo, the Clinic and their insurers; the remaining five claims, for various species of negligent conduct and vicarious liability, are only against the Clinic and its insurers. (*See* Am. Compl. (dkt. #11) ¶¶ 23-65.) The court will address the two variety of claims separately.

**I.   Medical Malpractice**

The governing statute of limitations for medical malpractice claims arises from Wis. Stat. § 893.55(1m), which states in relevant part:

> Except as provided by subs. (2) and (3), an action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of:
>
> (a) Three years from the date of the injury, or
>
> (b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this

paragraph more than 5 years from the date of the act or omission.

The parties agree that this statute governs plaintiff's medical malpractice claim. The parties differ, however, as to when the statute started running.[5] Defendants maintain that the "date of injury" was December 31, 2007, at the latest. In contrast, plaintiff contends that the "date of injury" occurred in October of 2012, when he first learned that Van de Loo's treatment was improper, meaning that his claim would be timely under Wis. Stat. § 893.55(1m)(a) (although not under Wis. Stat. § 893.55(1m)(b)). Because this is purely a legal question, the court need not accept as true plaintiff's allegation as to the date his claim accrued. *See Iqbal*, 556 U.S. at 678.

The Wisconsin Supreme Court addressed the proper definition of "injury" in Wis. Stat. § 893.55(1m)(a) in *Estate of Genrich v. OHIC Insurance Company*, 2009 WI 67, 318 Wis. 2d 553, 769 N.W.2d 481. In that case, Robert Genrich underwent a surgery that ended on July 24, 2003. Unbeknownst to him at the time, a sponge was left within his abdominal cavity at the close of the surgery, which later caused an infection. On August 8, 2003, after the discovery of the sponge, Genrich underwent a second surgery to have it

---

[5] This case bears some significant similarity to *Deborah S.S. v. Yogesh N.G.*, 175 Wis. 2d 436, 499 N.W.2d 272 (Ct. App. 1993). In that case, a physician allegedly touched the patient's vaginal, buttock and breast areas inappropriately during a neurological examination. The Wisconsin Court of Appeals declined to apply the medical malpractice statute of limitations, holding that "where the form of malpractice is alleged to be unnecessary and improper treatment, such malpractice conduct must constitute part of the treatment." *Id.* at 443. Because "the parties agree[d] that the acts alleged against the physician did not serve any medical reason related to the examination which the physician was required to perform upon the patient," the court held that *Deborah S.S.* was not a medical malpractice case. *Id.* Here, in contrast, plaintiff alleges that Van de Loo's actions were in the context of normal physical examinations. Unlike in *Deborah S.S.*, the plaintiff specifically alleges that the "unnecessary and improper treatment" *was* done in conjunction with (and apparently seemed to be a part of) regular medical treatment received from Van de Loo. The court will, therefore, defer to plaintiff's characterization of this action as one for medical malpractice and to the parties' agreement as to the proper statute of limitations. *Cf. J.W. v. B.B.*, 2005 WI App 125, ¶¶ 9-10, 284 Wis. 2d 277 (applying medical malpractice statute of limitations to claims that physician performed "unnecessary and inappropriate" prostrate exams during physical examinations).

removed, but he died from sepsis on August 11, 2003, allegedly due to the sponge. His estate brought suit on August 9, 2006.

OHIC moved for summary judgment, arguing that the medical malpractice claim was untimely under Wis. Stat. § 893.55(1m), because more than three years had passed since the date of injury. OHIC argued that the date of injury began when Genrich first suffered a "physical injurious change," relying on *Fojut v. Stafl*, 212 Wis. 2d 827, 569 N.W.2d 737 (Ct. App. 1997). The estate responded that Genrich's injury did not occur until his condition was irreversible -- at the earliest, August 9, 2003 -- and that its claim was timely, relying on *Paul v. Skemp*, 2001 WI 42, 242 Wis. 2d 507, 625 N.W.2d 860. The circuit court granted OHIC's motion, and the court of appeals affirmed.

The Wisconsin Supreme Court affirmed as well, holding that "the determination of a 'physical injurious change' is the appropriate benchmark for establishing the date of 'injury' under Wis. Stat. § 893.55(1m)(a)." *Estate of Genrich*, 2009 WI 67, at ¶ 17. The court applied essentially the same standard as it did in *Paul*, albeit in different words, holding that "an 'actionable injury arises when the [negligent act or omission] causes a greater harm than [that which] existed at the time of the [negligent act or omission]." *Id.* at ¶ 16 (alterations in original) (quoting *Paul*, 2001 WI 42, at ¶ 25). Under that formulation, the patient was found to have "suffered an injury when the doctors left an infection-producing sponge in his abdominal cavity, and the sponge was not there prior to the doctors' negligent conduct." *Id.* at ¶ 19. The *Genrich* court further explained that holding otherwise would "contradict the maxim that [a] later injury from the same tortious act does not restart the running of the statute of limitations." *Id.* at ¶ 21 (alteration in original) (quoting *Fojut*, 212 Wis. 2d at

8

832) (internal quotation marks omitted). Thus, it affirmed the finding of the courts below that the estate's malpractice claim was untimely under Wis. Stat. § 893.55(1m)(a).

Based on *Estate of Genrich*, defendants argue that plaintiff's claim for medical malpractice is similarly untimely. In particular, defendants maintain that the allegations in the amended complaint establish the latest possible date on which Van de Loo could have touched plaintiff improperly was December 31, 2007. In defendants' view, the alleged inappropriate touching itself constituted a "physical injurious change," while his eventual emotional distress is simply "a later injury from the same tortious act[, which] does not restart the running of the statute of limitations." *Id.* at ¶ 22. If plaintiff's injury occurred no later than December 31, 2007, for purposes of Wis. Stat. § 893.55(1m)(a), Genrich needed to bring his claim for medical malpractice no later than December 31, 2010.

To the contrary, plaintiff argues that *Paul* and *Fojut* (the cases discussed and synthesized in *Estate of Genrich)* require a finding that his malpractice claim did not accrue until October of 2012, when he allegedly began to suffer from profound psychological distress. In *Paul*, the defendant doctor allegedly misdiagnosed his patient, Jennifer Paul, on December 20, 1994. On May 22, 1995, an arteriovenous malformation in Jennifer's temple ruptured, causing hemorrhaging, and Jennifer passed away the next day. The Wisconsin Supreme Court ruled that the act of misdiagnosis itself was *not* the injury that started the running of the statute of limitations:

> The Pauls contend here, as they have before the circuit court and court of appeals, that what triggered the statute of limitations was not the alleged misdiagnosis, but the injury that resulted from that misdiagnosis, the rupture of the blood vessel. We agree with the Pauls. A misdiagnosis may be a negligent omission, but it is not, in and of itself, an injury. The Pauls'

9

>claim for medical malpractice did not, and could not, accrue until Jennifer suffered an injury.

*Paul*, 2001 WI 42, at ¶ 2.

In *Fojut,* the plaintiff underwent a tubal ligation in November of 1990, but she nevertheless became pregnant in March of 1991. The Wisconsin Court of Appeals rejected defendants' contention that the date of the surgery was the date of injury, holding that Fojut had not suffered any physical injury on the date of the tubal ligation:

> The purpose of the surgery was to render Helen infertile – to avoid pregnancy. There was no physical injurious change to Helen's body until she became pregnant.

*Fojut,* 212 Wis. 2d at 831.

Plaintiff contends that his case is comparable to *Paul* and *Fojut* in that he suffered no injury at the time of the allegedly inappropriate touching. Plaintiff claims that the touching itself, like the misdiagnosis in *Paul* and the surgery in *Fojut,* caused no injury because it did not alter his condition in any way. Rather, plaintiff asserts it was only upon learning much later the touching did not comport with the ordinary standard of care that he suffered an injury -- the negative psychological effects of which he complains in this lawsuit.

The court finds plaintiff's comparison to *Paul* and *Fojut* somewhat strained. This is neither a case where a negative *omission* caused a later injury, *Paul,* 2001 WI 42, at ¶ 2, nor a case where medical negligence frustrated the purpose of a procedure some time after that procedure took place, *Fojut*, 212 Wis. 2d at 831. Rather, plaintiff brings a claim for a series of affirmative acts -- specifically, "unnecessary and improper [medical] treatment" in the form of inappropriate touching. *Nw. Gen. Hosp. v. Yee,* 115 Wis. 2d 59, 61-62, 339 N.W.2d 583 (1983). There was no intended "purpose" behind the touching that Van de Loo failed

to accomplish, nor is there any alleged negligent omission on Van de Loo's part.  In this way, *Paul* and *Fojut* are not factually analogous to the present case.

Admittedly, *Estate of Genrich* does not provide a perfect comparison either.  A sponge negligently left in a patient's abdomen is a far clearer example of a "physical injurious change" than Van de Loo's alleged actions here, which left no physical (and if plaintiff's allegations are credited, no psychological) marks behind, at least initially.  Even so, the actual malpractice plaintiff alleges is Van de Loo's improper and unnecessary touching.  *See Yee*, 115 Wis. 2d at 61-62.  Under that malpractice theory, a claim would normally accrue upon receipt of the unnecessary treatment.  *See, e.g., J.W.* 2005 WI App 125, at ¶ 10 (medical malpractice claims based on unnecessary and inappropriate prostate exams were timely filed "between two and three years *after the conduct in question*") (emphasis added).  To hold otherwise would mean that a patient who underwent a thoroughly unnecessary procedure would have no malpractice claim unless she thereafter suffered some additional physical or emotional effects flowing from that procedure.  This is in conflict with the Wisconsin Supreme Court's decision in *Yee*, which explicitly noted that "this court and other jurisdictions have found unnecessary and improper treatment to constitute malpractice."  *Yee,* 115 Wis. 2d at 61-62; *see also Deborah S.S.*, 175 Wis. 2d at 442-43 (discussing *Yee*).  Under this approach, the "physical injurious change" plaintiff suffered was the touching, and any later emotional distress was an additional injury, meaning his claim accrued no later than December 31, 2007.

From a practical point of view, this result makes some sense.  Plaintiff strenuously disputes defendants' argument that this is a "discovery rule" case, because he failed to bring suit timely within one year of his alleged, latent psychological injury.  Yet applying his

theory of actionable injury would effectively import a discovery rule into Wis. Stat. § 893.55(1m)(a). Section 893.55(1m) is governed by a limited, legislatively-created version of the discovery rule, rendering it exempt from the Wisconsin Supreme Court's holding in *Hansen v. A.H. Robins, Inc.*, 113 Wis. 2d 550, 335 N.W.2d 578 (1983), that the discovery rule applies to all tort actions. *Miller ex rel. Sommer v. Kretz*, 191 Wis. 2d 573, 580-81, 531 N.W.2d 93 (Ct. App. 1995). A plaintiff bringing a medical malpractice claim must adhere to that limited discovery rule and, therefore, has two options: he can either sue within three years of injury, or he can sue within one year of discovering the injury. Here, plaintiff arguably did neither. Instead, he seeks to bring suit within three years of *discovering* that Van de Loo's conduct allegedly failed to meet the standard of care for a pediatrician.

In fairness, Van de Loo also maintains that this discovery effectively triggered the injury itself, but under his formulation a plaintiff could avoid the statute of limitations indefinitely on claims involving emotional distress simply by arguing that he did not begin suffering psychological fallout -- the only alleged "injury" here -- until long after the allegedly negligent act took place. Absent a departure from recent precedent, it would seem unlikely that this result was intended by the Wisconsin legislature, or for that matter by the Wisconsin Supreme Court, particularly given that the legislature not only included a limited version of the discovery rule in § 893.55(1m)(b), but also added a five-year statute of repose that serves "to bar medical malpractice actions even if a claimant has yet to discover a latent injury." *Storm v. Legion Ins. Co.*, 2003 WI 120, ¶ 19, 265 Wis. 2d 169, 665 N.W.2d 353 (citing *Aicher v. Wis. Patients Comp. Fund*, 2000 WI 98,¶¶ 26, 47, 237 Wis. 2d 99, 613 N.W.2d 849); *see also Rodman Indus., Inc. v. G&S Mill, Inc.*, 145 F.3d 940, 942-43 (7th Cir. 1998) (in the absence of clear guidance on substantive law from Wisconsin Supreme Court,

federal court must "predict how the Wisconsin Supreme Court would decide the issues presented").

Thus, at least as Wisconsin law currently stands, the court concludes that plaintiff's claim for medical malpractice against Van de Loo accrued on or before December 31, 2007, meaning he had to bring suit by December 31, 2010, and certainly no later than October of 2013 (one year from his alleged discovery). He did not -- in fact, he did not bring suit until May 29, 2014 -- and his malpractice action is, therefore, time-barred.

## II. Vicarious Liability Claim

Plaintiff also brings a claim for vicarious liability against the Clinic premised on the malpractice Van de Loo allegedly committed while in the Clinic's employ. (*See* Am. Compl. (dkt. #11) ¶¶ 36-42.) Such claims are dependent on the underlying tortious conduct of the employee. *See Kerl v. Dennis Rasmussen, Inc.*, 2004 WI 86, ¶ 18, 273 Wis. 2d 106, 682 N.W.2d 328. Therefore, they accrued at the same time as the underlying medical malpractice claim and are similarly time-barred. 54 C.J.S. *Limitations of Actions* § 36 (2014) ("A statute of limitations that applies to a cause of action against an employer is also applicable to a respondeat superior claim against the employer, and the case against the employer is properly dismissed if a claim against the employee is time-barred."); *see also BBB Doe v. Archdiocese of Milwaukee*, 211 Wis. 2d 312, 366, 565 N.W.2d 94 (1997) ("Plaintiffs' derivative causes of action [for respondeat superior and negligent employment] . . . accrued at the same time that the underlying intentional tort claims accrued, and similarly would be

barred by the statute of limitations.").[6]  Accordingly, the Clinic's motion to dismiss this claim is granted.[7]

### III. Negligence-Based Claims

Finally, plaintiff brings four negligence-based claims against the Clinic (and, by extension, against its insurers): (1) negligence; (2) negligent failure to warn; (3) negligent retention; and (4) negligent supervision.  (*See* Am. Compl. (dkt. #11) ¶¶ 29-35, 43-65.)  The Clinic argues that these are simple negligence claims, subject to the three-year statute of limitations found in Wis. Stat. § 893.54.  In contrast, plaintiff contends that these claims are actually medical malpractice claims at their core and are governed by Wis. Stat. § 893.55(1m).  Ultimately, the court need not and does not decide which statute of limitations governs, because as the Clinic recognized in its reply brief, they are time-barred under either statute of limitations.

Taking first plaintiff's position and presuming that his claims for negligence on the part of the Clinic are medical malpractice claims, they, too, would be governed by Wis. Stat. § 893.55(1m), subject either to:  subsection (a)'s three-year statute of limitations from the date of injury; or to subsection (b)'s one-year discovery rule and five-year statute of repose. The court has already concluded above that plaintiff's medical malpractice claims stem from allegedly unnecessary and inappropriate touching, which accrued no later than December 31, 2007, making this suit untimely under either (a) or (b).  Plaintiff has offered no arguments beyond those already rejected above to alter this conclusion.

---

[6] This language from *BBB Doe* was later cited as "controlling precedent" in *Doe 1 v. Archdiocese of Milwaukee*, 2007 WI 95, ¶ 36, 303 Wis. 2d 34, 734 N.W.2d 827.

[7] As a result, the court need not address the Clinic's alternative argument that it lacked sufficient control over Van de Loo to support the imposition of vicarious liability.

The Clinic's position requires a bit more discussion given that, as noted above, the Wisconsin Supreme Court has adopted the discovery rule "for all tort actions other than those already governed by a legislatively created discovery rule." *Hansen*, 113 Wis. 2d at 560. "Such tort claims shall accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first." *Id.* Thus, presuming plaintiff's other claims to be governed by Wis. Stat. § 893.54, they could theoretically be timely so long as plaintiff did not discover his injury (meaning his claims did not accrue) until May 29, 2011, three years before he filed this suit.

Indeed, plaintiff alleges here that he did not discover and could not reasonably have discovered his injury until October of 2012. (*See* Am. Compl. (dkt. #11) ¶ 21.) Unfortunately for plaintiff, the Wisconsin Supreme Court appears to have foreclosed application of the discovery rule to save his claim in cases like *Doe 1 v. Archdiocese of Milwaukee*, 2007 WI 95, 303 Wis. 2d 34, 734 N.W.2d 827; *BBB Doe v. Archdiocese of Milwaukee*, 211 Wis. 2d 312, 565 N.W.2d 94 (1997); and *Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis. 2d 302, 533 N.W.2d 780 (1995).

These three cases dealt with allegations of sexual assault against individual priests and corresponding claims of negligence against the Archdiocese. *Pritzlaff* held that "actionable injury flows immediately from a nonconsensual, intentional sexual touching." *BBB Doe*, 211 Wis. 2d at 343-44 (citing *Pritzlaff*, 194 Wis. 2d at 317). Later, in *BBB Doe*, the Supreme Court of Wisconsin held:

> In cases where there has been an intentional, non-incestuous assault by one known to the plaintiff, and the plaintiff sustains actual harm at the time of the assault, the causal link is established as a matter of law. These plaintiffs knew the individual priests, knew the acts of sexual assault took place, and

15

> knew immediately that the assaults caused them injury. We therefore conclude that these plaintiffs discovered, or in the exercise of reasonable diligence, should have discovered all the elements of their causes of action against the individual perpetrators at the time of the alleged assault(s), or by the last date of the alleged multiple assaults.

211 Wis. 2d at 344-45.

While plaintiffs argued that, as children, they "viewed their abusers with respect and reverence" and, therefore, "did not and could not discover their cause of action for assault, until much later in adulthood," *id.* at 345-46, the supreme court rejected this argument. The court noted that the Wisconsin legislature recognized specific instances in which adults may hold sufficient "sway over children as to prevent them from recognizing the wrongfulness of their conduct" by creating an extended statute of limitation for cases of incest and sexual exploitation by a therapist. *See id.* at 349-53. The legislature did not include "claims of abuse by other persons who may hold influence in a child's life" in those extensions. *Id.* at 351. Accordingly, the court applied the flat rule of *Pritzlaff* to the plaintiffs' claims and held that they were time-barred. In a brief concluding paragraph, the court also stated that the plaintiffs' claims based on respondeat superior and negligent employment theories "accrued at the same time that the underlying intentional tort claims accrued, and similarly would be barred by the statute of limitations." *Id.* at 366.[8]

---

[8] In *BBB Doe*, the Wisconsin Supreme Court went to some lengths to find, as reflected in the quotation above, to find that the plaintiffs "knew immediately" that they had been injured by inappropriate touching. *See* 211 Wis. 2d at 345 & n.20 ("These five plaintiffs essentially admit that they knew they suffered an injury at or shortly after the alleged assaults."). This arguably leaves a narrow window for plaintiff, at least given his claim that he was not aware of suffering any injury from Van de Loo's inappropriate touching until many years later. For reasons set forth above, however, the court thinks it unlikely that the Wisconsin Supreme Court intended to leave such a window for inappropriate touching by a physician.

16

*Doe 1* went one step further and expressly analyzed the plaintiffs' claims against the Archdiocese for negligent supervision. It discussed preceding case law, including *BBB Doe* and *Pritzlaff*, and noted that the *BBB Doe* court had definitively held claims of negligent supervision were "derivative claims," defining a "derivative claim" as "one 'that derives from, grows out of, or results from an earlier or fundamental state or condition.'" *Doe 1*, 2007 WI 95, at ¶ 24 & n.11 (quoting *Webster's Third New International Dictionary Unabridged* 608 (1961 ed.)). Thus, the *Doe 1* court held that a claim for "negligent supervision of an employee is derivative of an employee's wrongful act that causes injury to another, which wrongful act is alleged to have been caused by the employer's negligence." *Id.*

After distinguishing certain other Wisconsin cases, which described negligent supervision claims as "focus[ing] on conduct that is separate from the underlying wrongful acts of the employer," *id.* at ¶ 32, the *Doe 1* court went on to hold as follows:

> Accordingly, we conclude that *BBB Doe* and *Pritzlaff* control the outcome of the claims for negligent supervision that are before us. They are controlling precedent that have decided that the claims of negligent supervision made here are derivative of the underlying sexual molestations by the priests. As such, those claims accrued, as a matter of law, by the time of the last incident of sexual assault. . . . Therefore, the claims for negligent supervision are barred by the statute of limitations for negligence, as applied in prior controlling precedent.

*Id.* at ¶ 36.

*Pritzlaff*, *BBB Doe* and *Doe 1* compel the same conclusion here. Even if they are governed by Wis. Stat. § 893.54, therefore, plaintiff's negligence-based claims in this suit are time-barred. The claims for negligence, negligent supervision, retention and failure to warn are "derivative" under the broad definition that the Wisconsin Supreme Court employed in *Doe 1*, because they all derive from Van de Loo's alleged medical malpractice,

17

which was in turn allegedly caused by the Clinic's negligence in failing to: enforce maintain or policies to protect patients; supervise Van de Loo; warn patients about Van de Loo; and dismiss Van de Loo from his employ as a physician. Thus, these claims accrued as a matter of law by the time the underlying tort for medical malpractice accrued -- December 31, 2007. Under Wis. Stat. § 893.54(1), plaintiff had until December 31, 2010 to bring this lawsuit. Having instead waited to file on May 29, 2014, his suit is untimely.

Plaintiff briefly seeks to distinguish the *BBB Doe* decision on the grounds that it refers to a *nonconsensual* touching causing immediate actionable injury, while plaintiff alleges that he consented to the examination in this case. The court does not find this distinction persuasive because the *BBB Doe* holding is predicated on the fact that the negligence claims are derivative of the underlying tort -- not on the nature of the tort itself. Said another way, the court does *not* hold that the medical malpractice claim in this case is identical to the sexual battery claim in *BBB Doe*: plaintiff has not sought to maintain a cause of action for sexual battery in this suit.[9] Rather, the court holds only that, under *BBB Doe* and *Doe 1*, the "satellite employer" torts that plaintiff alleges are "derivative" of the underlying tort claim and, therefore, accrued on the same day.

ORDER

IT IS ORDERED that:

1) Defendant Mayo Clinic Health System-Eau Claire Clinic, Inc.'s motion to dismiss the amended complaint (dkt. #15) is GRANTED.

2) Defendant Injured Patients and Families Compensation Fund's motion to dismiss the amended complaint (dkt. #23) is GRANTED.

---

[9] Plaintiff's original complaint alleged a cause of action for sexual battery, but his amended complaint, which is the operative pleading, retracted that claim.

3) Mayo Clinic Health System-Eau Claire Clinic, Inc.'s motion for judicial notice (dkt. #26) is DENIED as moot.

4) Defendant David Van de Loo's motion to dismiss the amended complaint (dkt. #32) is GRANTED.

5) Mayo Clinic Health System-Eau Claire Clinic, Inc.'s motion for leave to file a reply (dkt. #37) is DENIED as moot.

6) Plaintiff John Doe 52's motion to deem that plaintiff has opposed the Fund's motion to dismiss (dkt. #39) is DENIED as moot.

7) Mayo Clinic Health System – Eau Claire, Inc.'s motion to compel plaintiff to proceed under his real name (dkt. #53) is DENIED as moot.

Entered this 3rd day of April, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge